TUCKER, Judge.
This is an appeal by plaintiff for an increase in the amount of damages awarded her in the lower court for false arrest on a “shoplifting” charge, for illegal detention, public defamation, and slander.
*244 Plaintiff sued defendants originally for $10,000.00 in damages, but was awarded damages in the amount of $250.00. From that judgment in her favor plaintiff has appealed to this court, asking an increase in the amount of judgment to One Thousand, Five Hundred Dollars ($1,500.00). Defendant answered the appeal, denying all liability and any damage.
On the afternoon of December 3, 1968, plaintiff Lucinda Cannon, an employee for the past eighteen years of the East Baton Rouge Parish School Board at the Bernard Terrace School cafeteria, entered Goud-chaux’s Store in order to purchase a fur. She was carrying on her arm a new beige trench coat (Tr. 4) which her daughter had recently purchased at Lerner’s Dress Shop and given her as a birthday-Christmas present. Plaintiff looked at some furs briefly, with the assistance of a Goud-chaux’s saleslady, and then returned to the sidewalk outside the front entrance of Goudchaux’s to meet her mother, as prearranged, so that they might look at the furs together. The plaintiff’s mother, also an employee of the East Baton Rouge Parish School for twenty-three years, but located at the La Salle School cafeteria, had previously agreed to allow her daughter to charge the fur to her account- and had made credit arrangements with an employee in the credit department of Goud-chaux’s to this effect.
The Goudchaux’s saleslady who had assisted the plaintiff apparently did not notice that she was carrying the beige coat when she entered. When she was leaving, she saw her walking out wearing the beige coat, but pulling price tags off of it and throwing them on the floor. Although there is some conflict in the testimony of the saleslady and the store detective, it is established by the record that she summoned him from the second floor of Goud-chaux’s and sent him to observe plaintiff as a person who had been seen leaving the store pulling price tags off the coat she was wearing. The saleslady evidently believed that the coat was a Goudchaux’s coat. Prior to summoning the store detective the saleslady had asked the policeman on the Goudchaux’s beat, standing just outside the entrance of the store to keep his eye on the plaintiff until the store detective could come and question her.
When the Goudchaux’s store detective, who was an off-duty Baton Rouge policeman, arrived shortly thereafter, he showed the plaintiff his police badge and told her that he was “a police officer employed by Goudchaux’s to apprehend shoplifters.” He told her also that a Goud-chaux employee had observed her walking out of the store in the coat and pulling the tags off of .it. He asked plaintiff to give him the coat and go with him into the store. Plaintiff was very surprised by this turn of events, but surrendered the coat to the detective and accompanied him into the store. After recovering somewhat from her shock at the substantial accusation of shoplifting, she told the detective that her coat came from Lerner’s Dress Shop and had been a gift to her from her daughter. The detective nevertheless took her to the coat department where the saleslady there examined the coat and told the detective that it was not a Goudchaux’s coat. Although he had previously been told where the plaintiff dropped the tags, he had not picked them up to examine them, preferring, as he said, to conduct his investigation as he saw fit (Tr. 104). At the time that the coat department saleslady advised the detective that plaintiff’s coat was not a Goudchaux’s coat, the original fur saleslady came up and handed the detective the tags from plaintiff’s coat which showed it to be a Lerner’s coat. At this point the detective testified that he was through with the case (Tr. 106), and handed the plaintiff her coat.
Again the testimony is conflicting. The plaintiff testified that the detective took her into the office of the president of Goudchaux’s and there detained her while he called her daughter to satisfy himself further that her beige coat had not come from Goudchaux’s. Plaintiff alleges that *245 the detective never apologized to her in any way, but finally returned her coat and told her that she could leave. The detective, on the other hand, testified that he invited plaintiff into the president’s office, where he intended to write a report on the incident, because she was so upset and so loud that he wanted to get her out of the main aisles of Goudchaux’s. He testified further (Tr. 108-110, 112, 113) that the plaintiff was not satisfied with his explanation of why he had detained her and questioned her, that she kept demanding to talk to the manager of the store, saying that she was going to sue him and Goudchaux’s and everyone concerned. The detective testified that plaintiff insisted that he call her daughter in regard to the origin of the coat (Tr. 114, 1 IS), although he was satisfied at that point that the coat did not come from Goudchaux’s. In his report made at the time of the incident the detective stated that the whole affair occurred in about five to ten minutes.
Still very upset, the plaintiff left the president’s office and went to meet her mother outside the entrance of Goud-chaux’s. She informed her mother of the accusations against her and of the whole episode, whereupon her mother became highly agitated and went to the president’s office herself, taking the plaintiff with her. Mrs. Annie Hawkins, the mother of plaintiff, testified that the store detective and the policeman on the beat who was then standing in the office door, both refused to listen to her. She then went out into the store and found Mr. Stern-berg, president of Goudchaux’s, and told him the whole story. By their own testimony he was very nice to plaintiff and her mother, gave them coffee to drink, calmed them down, apologized, and even assisted in the sale to plaintiff of a fur, not the one on sale she had originally gone to Goud-chaux’s to purchase, but a much finer one. Plaintiff said that, although she was still upset over having been embarrassed and humiliated in front of all those people in Goudchaux’s, she went on and fulfilled her purpose in going to Goudchaux’s which was to get a fur to wear to a party. The record reveals that a friend of plaintiff’s was present in the store during the period in which plaintiff was accused of “shoplifting.” There is nothing to indicate that she observed the whole proceedings, but the plaintiff informed her friend of them, to the latter’s consternation.
Although the testimony of the witnesses is conflicting on several material points, the trial judge who was in a better position than this court to evaluate the testimony of the witnesses before him, found sufficient evidence upon which to base liability in Goudchaux’s for nominal damages to plaintiff. We see no reason to disturb his ruling and adopt his findings and reasoning in part, as follows:
“In the court’s opinion, the officer representing Goudchaux’s initially had a reasonable basis for making an inquiry of the petitioner as to the origin of the coat and whether it had been wrongfully removed from the store premises. Nonetheless, after he was told by another informed Goudchaux’s employee that the coat was not their merchandise, he pursued the investigation to an extent which was not justified under the circumstances and which should entitled (sic) the plaintiff to damages.
“The court does not think that the petitioner has proven any substantial damages. There can be no question that the clearly implied charge that she was shoplifting caused her to be angered and humiliated ; however, her actions subsequent to the incident do not confirm that she was greatly mortified. Within an hour or so after the occurrence she purchased an expensive coat from the store and has continued to do business with Goudchaux’s on a frequent basis. * * * ft
The judgment of the trial court is affirmed at the costs of defendant-appellees.
Affirmed.